[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for the dissolution of marriage. The plaintiff and the defendant were married on October 8, 1982 in Milford, Connecticut. The plaintiff resided at least one year continuously in the State of Connecticut before the date of the filing of the complaint. There are two minor children, issue of this marriage, Kristen Arlene, born March 8, 1983, and Vincent Patrick, born October 21, 1986. The state of Connecticut is not contributing to the support or maintenance of a party or a child of a party. The marriage of the parties has broken down irretrievably.
The plaintiff is 34 years old and the defendant is 44. Both parties are in good health. The two children are also in good health and have no special medical needs, except that Vincent Patrick requires orthodontic treatment at a cost of approximately $5,000.
The cause of the breakdown of the marriage was the defendant's repeated violation of the criminal law, and resultant impact on the plaintiff and children. The defendant has a record CT Page 5650 of a criminal conviction which predates the marriage. Then in 1990, the defendant was arrested for trespass and burglary committed on a neighbor's home. He was convicted in 1991. The incident understandably ostracized the family from its own neighbors, and emotionally affected the parties' children. The defendant continued with several other convictions for larceny related offenses. He apparently has managed to avoid incarceration, but the situation became intolerable for the plaintiff. Based upon all this, the court finds that fault for the marital breakdown rests exclusively with the defendant.
The court next reviews the parties' financial circumstances and work histories, beginning with the plaintiff. The plaintiff had part-time work in 1991 and 1992, during which she did not earn more than $7,200 per year. She then started up her own business with the assistance of $3,000 to $5,000 from the defendant. The business essentially broke even. Since then, the plaintiff has relocated to Florida with the children. She is currently employed there as a manager for sales and marketing in a company partially owned by her father. She earns $25,000 per year and has the use of a car.
The defendant's past history is more difficult to gauge because of a lack of information. Prior to the defendant's current employment, he was self-employed in the construction and remodeling trade. He has worked in that trade since 1983 or 1984. He has not filed tax returns since approximately 1990, and claims not to know his earnings for those years. The defendant is currently employed as a tent erector for a local company, and earns $360 gross, $265 net per week.
One of the issues presented is whether financial orders should be based upon, in part, the defendant's current income or an arguably greater earning capacity. The plaintiff offered certain evidence in an attempt to show that the defendant has a significantly greater earning capacity than his current earnings as a tent erector. Specifically, the court finds that when the defendant was self employed he had steady, consistent work and that he paid, somewhat regularly, the household expenses in the sum of $4,000 to $4,500 monthly.
"It is well established that the trial court may under appropriate circumstances in a marital dissolution proceeding base financial orders on the earning capacity of the parties rather than on actual earned income." Lucy v. Lucy, 183 Conn. 230, CT Page 5651 234 (1981). Such an award is especially appropriate where one has "wilfully depleted his or her earnings in an attempt to deny or limit the amount of alimony paid to a former spouse,"Whitney v. Whitney, 171 Conn. 23, 28 (1976), or has voluntarily and unilaterally left employment resulting in a reduction of income. Miller v. Miller, 181 Conn. 610, 612 (1980).
However, the problem for the plaintiff in this case is that she has produced no sufficient and credible evidence of any specific amounts of the defendant's past income. In that regard, this case is very similar to Schmidt v. Schmidt, 180 Conn. 184,190-191 (1980), where our Supreme Court reversed an award based upon a party's earning capacity. The Supreme Court noted that there had been no evidence of any "specific amounts of such an income" and that, therefore, the award had been "based on speculation and conjecture and cannot stand." Schmidt, supra. This court believes that the same deficiencies in Schmidt are present here. Moreover, the defendant's criminal history, his lack of a contractor's license and the parties' joint bankruptcy filing in 1990, all support, rather than undermine, the conclusion that the defendant has no viable self employment opportunities in the construction trade. Accordingly, the court bases alimony and support orders upon the defendant's current income (Appendix "A"). The court also finds a child support arrearage in the sum of $4,120.
The court enters the following orders:
1. The marriage of the parties is dissolved on grounds of an irretrievable, breakdown.
2. The plaintiffs maiden name of Mary Louise Sandor is restored forthwith.
3. The defendant is ordered to pay the plaintiff $1 per year as periodic alimony for ten years or the plaintiff's death, remarriage or cohabitation, whichever first occurs.
4. Orders for custody and visitation are entered in accordance with the parties' stipulation.
5. The defendant is ordered to pay the plaintiff current child support in the sum of $100 per week, plus $20 per week against the arrearage. CT Page 5652
6. The defendant is ordered to provide the plaintiff with copies of all tax returns filed by the defendant, all W2's or 1099's received by the defendant, and any information concerning a change of employment, so long as the defendant has an alimony or support obligation to the plaintiff.
7. The defendant is ordered to procure insurance on his life in the sum of $100,000, naming the plaintiff as beneficiary, so long as the defendant has an alimony or support obligation to the plaintiff.
8. Each party shall procure and maintain health insurance for the benefit of the minor children as such may be available through the parties' employment. The cost thereof shall be shared equally by the parties. Any unreimbursed medical or dental expenses, past or future, shall be shared equally by the parties.
9. The plaintiff shall retain all of her assets shown on her financial affidavit, including the parties' Oriental rug. The plaintiff shall transfer to the defendant the items contained in paragraph 6.(a) through (f) of the defendant's claims for relief, to the extent the plaintiff possesses them.
10. The defendant shall retain all items listed on his financial affidavit. The defendant shall transfer to the plaintiff title to any station wagon and shall also transfer to the plaintiff the minor son's art work and school papers, to the extent the defendant possesses them.
11. Each party shall be responsible for, and shall indemnify the other against, all liabilities listed on their respective financial affidavits.
12. The defendant shall indemnify and hold the plaintiff harmless against any and all tax liabilities occurring or accruing during the parties' marriage.
13. The defendant shall pay the plaintiff $1,500 as an allowance to prosecute, as follows: $750 by October 31, 1996 and $750 by December 31, 1996.
14. Counsel for the plaintiff shall prepare the judgment file.
Dated at Stamford, Connecticut, this 22nd day of August, CT Page 5653 1996.
JOHN F. KAVANEWSKY, JR., JUDGE